UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MOUNTZ, INC.,

Plaintiff,

v.

NORTHEAST INDUSTRIAL BOLTING AND TORQUE, LLC.,

Defendant.

Case No. 15-cv-04538-MEJ

**ORDER FOR REASSIGNMENT WITH REPORT & RECOMMENDATION RE: MOTION FOR DEFAULT JUDGMENT**

Re: Dkt. No. 17

## INTRODUCTION

Pending before the Court is plaintiff Mountz, Inc.'s ("Plaintiff") Motion for Default Judgment. Mot., Dkt. No 17. In the Motion, Plaintiff requests the Court enter an order granting default judgment against defendant Northeast Industrial Bolting and Torque, LLC ("Defendant"). Plaintiff seeks injunctive relief in the form of a permanent injunction and a determination that it is entitled to recover attorneys' fees and costs. No response has been received from Defendant. The undersigned vacated the September 29, 2016 hearing on the Motion pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-(1)(b).

After carefully reviewing the Motion and controlling authorities, the undersigned issues this Report and Recommendation. The undersigned **RECOMMENDS** the District Court **GRANT IN PART** the Motion for Default Judgment for the reasons set forth below. Further, because no consent to magistrate judge jurisdiction has been filed by Defendant, the Clerk of Court shall **REASSIGN** this case to a district court judge for disposition.

//

//

//

United States District Court
Northern District of California

**BACKGROUND**[1]

Since 1965, Plaintiff has sold torque tools in North America, including in California. Compl. ¶¶ 2, 7, Dkt. No. 1; Bartels Suppl. Decl., Ex. 6, Dkt. No. 21-2 (locations of US Sales Staff include Los Angeles and San Jose). Torque tools are used in a number of industries, including aerospace, automotive, energy, medical, and packing. Compl. ¶ 2. For 23 years, Plaintiff has used the trademark "The Torque Tool Specialists" (the "Mountz Mark") to identify its goods and services. *Id.* ¶ 10. Plaintiff registered the Mountz Mark with the U.S. Patent and Trademark Office ("PTO"), and the PTO issued U.S. Trademark Registration No. 2,244,332 for the Mountz Mark. *Id.* & Ex. A. The Mountz Mark was rendered incontestable on January 26, 2005. *Id.* & Ex. B. On July 9, 2009, the registration of the Mountz Mark was renewed for an additional ten years. *Id.* & Ex. C.

Through Plaintiff's advertisement and promotion of the Mountz Mark, the Mountz Mark has acquired secondary meaning to current and potential consumers of Plaintiff's goods and services. *Id.* ¶ 11. Plaintiff operates a website and displays the Mountz Mark on many pages of the website in association with merchandise it offers for sale online. *Id.* Plaintiff's website generates approximately 22,000 hits from visitors per month. *Id.*

Defendant sells tools and services under a variation of the Mountz Mark. *Id.* ¶¶ 4, 13. Defendant chose the variation to trade off Plaintiff's reputation with its customers and trade off the goodwill the Mountz Mark currently enjoys. *Id.* ¶¶ 4, 13, 14. Customers have been misled and confused. *Id.* ¶¶ 4, 14. Plaintiff's reputation has been tarnished and the value and distinctiveness of the Mountz Mark have been diminished. *Id.* ¶ 14.

In 2015, Plaintiff learned Defendant was selling a line of tools substantially identical to a line of tools sold by Plaintiff, and using the tagline "Torque Tool Specialist" in its advertising of that product line and associated products and services. *Id.* ¶ 13. On July 3, 2015, counsel for Plaintiff sent Defendant a cease and desist letter, requesting Defendant stop using the phrase

[1] On a motion for default judgment, the well-pled factual allegations contained in the plaintiff's complaint are taken as true, except for those relating to the amount of damages. *See Televideo Sys, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

"Torque Tool Specialist" because it infringes on the Mountz Mark. Bartels Decl. ¶ 3 & Ex. 1, Dkt. No. 17-1. Defendant refused to do so. *Id.* ¶ 4 & Ex. 2. Responding to the cease and desist letter, Defendant emailed Plaintiff: "Are you freeking kidding me? . . . Fine... [I] will have my lawyer respond to your lawyer. Now i know that we are competitors, and will never work together. Pandoras bix is open. This gives me a reason now to specifically go after your customers and compete and under price every one of your customers, since you want to be an asshole. Instead of giving you leads i can just take all your sales away.! By the way, i am one of a dozen companies that say torque tool specialist. Your attempt to trademark it doesn't have a leg to stand on. We can waste money all day long with our lawyers, it makes no difference to me. You asked for it, now you got it." Mountz Decl. ¶ 5 & Ex. 3, Dkt. No. 17-2 (errors in original).

Plaintiff filed the instant complaint on October 1, 2015. Compl. It emailed Defendant a copy of the Complaint on October 8, 2015, asking whether Defendant would waive service of a summons, and making an offer of settlement. Bartels Decl. ¶ 5 & Exs. 3-4. Defendant did not return the waiver of service. *Id.* ¶ 6.

On November 2, 2015, Defendant filed an application with the PTO to register "Torque Tool Specialist" as mark. *Id.* ¶ 11 & Ex. 6. The PTO refused to register the "Torque Tool Specialist" mark because it determined it would create a likelihood of confusion with the Mountz Mark. *Id.* & Ex. 7. The PTO found Defendant's proposed mark "is confusingly similar" to the Mountz Mark "because the marks share the identical phrase 'Torque Tool' followed by the virtually identical 'specialist' (applied-for mark) or 'specialists' (cited mark), leading potential consumers to likely be confused as to the source of the goods and/or services offered under such highly similar marks." *Id.* Ex. 7 § II.A. The PTO further found that "[t]he goods identified in the cited registered mark (hand and power tools, torque tools) are for the precise kinds of tools applicant offers for rental ('hand and power tools') and/or to which applicant's repair services apply ('large torque tools')." *Id.* § II.B. The PTO concluded "[c]onsumers are likely to confuse the source of the goods and/or services" between the two marks; furthermore, "as the goods and/or services of the applied for mark and the cited registration are related and possibly overlapping, they may travel within the same channels of trade." *Id.*

On December 2, 2015, Plaintiff caused the Summons, Complaint, and all associated documents to be personally served on Kris Sabol, the person authorized to accept service of process on behalf of Defendant. Bartels Decl. ¶ 6; Certificate of Serv. Dkt. No. 11. After Defendant failed to respond to the Complaint or appear in the action, the Clerk of Court entered default against Defendant. Entry of Default, Dkt. No. 13. Plaintiff emailed a copy of the Entry of Default to Defendant. Bartels Decl. ¶ 8.

## DISCUSSION

### A. Jurisdiction and Service of Process

In considering whether to enter default judgment, a district court must first determine whether it has jurisdiction over the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Additionally, the Court must "assess the adequacy of the service of process on the party against whom default is requested." *Bank of the W. v. RMA Lumber Inc.*, 2008 WL 2474650, at *2 (N.D. Cal. June 17, 2008).

#### 1. Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the action. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiff asserts claims for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1114(1) & 1125(a). As such, the Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Plaintiff also may assert supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they arise from the same conduct that underlies the Lanham Act violations.

#### 2. Personal Jurisdiction

##### *a. Basis for Personal Jurisdiction*

To enter default judgment, the Court must have a basis for the exercise of personal jurisdiction over the defendant in default. *In re Tuli*, 172 F.3d at 712; *see also King v. Russell*,

963 F.2d 1301, 1306 (9th Cir. 1992).[2] Plaintiff argues this Court may exercise specific jurisdiction over Defendant based on Defendant's sufficient minimum contacts with this forum. *See* Mot. at 4-5. Courts may exercise "personal jurisdiction over a non-resident defendant" only if that defendant has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Dole Food Co. v. Watts*, 303 F.3d 1104, 1110-11 (9th Cir. 2002) (quoting *Int'l Shoe*, 326 U.S. at 316).

Courts in the Ninth Circuit may exercise specific jurisdiction over a defendant under the minimum contacts analysis where the following three elements are established: (1) the non-resident defendant purposefully directed his activities or consummated some transaction with the forum or resident thereof; or performed some act by which he purposefully availed himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim arose out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of establishing the first two prongs; if the plaintiff does so, the burden shifts to the defendant to "present a compelling case" the exercise of jurisdiction would not be reasonable. *Id*.

A plaintiff can satisfy the first prong by demonstrating the defendant either "purposefully availed" itself of the forum, or "purposefully directed" its conduct toward the forum. *See id*. at 802 ("A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort."). Purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id*. (citations omitted). Purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the

[2] Where, as here, there is no applicable federal statute governing personal jurisdiction, a district court determining whether exercising personal jurisdiction over a nonresident defendant is proper must apply the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Because California's long-arm statute is "coextensive with federal process requirements[,]" this Court applies the minimum contacts analysis. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at 803 (citations omitted). To determine whether a defendant "purposefully directs his activities at a forum state," courts apply the "effects" test articulated in *Calder v. Jones*, 465 U.S. 783 (1984); *Crunchyroll, Inc. v. Pledge*, 2014 WL 1347492, at *8-10 (N.D. Cal. Mar. 31, 2014) (adopting magistrate judge report & recommendation). This test "focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id*. (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). The *Calder* "effects" test requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

The Supreme Court recently clarified that the "crux of *Calder*" was that the effects of the tort connected defendants to the forum state, "not just to the plaintiff." *Walden v. Fiore*, 134 S. Ct. 1115, 1122-25 (2014) (the relationship between the defendant, the forum, and the litigation "must arise out of contacts that the 'defendant himself' creates with the forum State"; "the plaintiff cannot be the only link between the defendant and the forum"; the injury must be "tethered" to forum "in a meaningful way"). Courts in this district have questioned whether Ninth Circuit precedent finding the "express aiming" requirement satisfied simply where defendants have engaged in wrongful conduct targeting plaintiffs known to reside in the forum is still good law in the wake of *Walden*. *See Adobe Sys. Inc. v. Cardinal Camera & Video Ctr., Inc.*, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (citing *Erickson v. Neb. Machinery Co.*, 2015 WL 4089849, at *2-3 (N.D. Cal. July 6, 2015) and other cases).[3]

*b. Purposeful Direction*

Because the Complaint sounds in tort rather than in contract, Plaintiff must establish that Defendant purposefully directed its conduct towards California under the *Calder* effects test. To establish an "intentional act" Plaintiff need only show Defendant had the "intent to perform an

[3] Because Plaintiff did address *Walden* in its Motion, the Court ordered supplemental briefing on the issue. Br. Order, Dkt. No. 20; Suppl. Br., Dkt. No. 21.

actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell*, 606 F.3d at 1128. Sales and marketing efforts constitute intentional acts sufficient to satisfy the first prong of the *Calder* test. *See AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014) (citing cases).

Plaintiff also establishes Defendant expressly directed its conduct towards California. Taking as true the allegations of the Complaint and the additional evidence Plaintiff submitted in support of its Motion, Plaintiff has established "Defendant sells to the general public, including to consumers who reside in the State of California and the Northern District of California" (Compl. ¶ 9); corresponded with a prospective client about a project explicitly located in California and offered a quote for working on that project (Stewart Decl. ¶ 3 & Exs. 1-2, Dkt. No. 17-3); and threatened to "specifically go after" Plaintiff's customers, some of which are located in California (Mountz Decl., Ex. 3; Compl. ¶¶ 2, 7; Suppl. Bartels Decl., Ex. 6).[4] Through these affirmative actions and statements, Defendant has specifically targeted customers in California, including *Plaintiff's* customers in California.

*Walden* does not preclude the exercise of jurisdiction over Defendant here. The defendant in *Walden* "never traveled to, conducted activities within, contacted anyone in, or sent anything to anyone" in the forum state. 134 S. Ct. at 1124. Unlike in *Walden*, Plaintiff's injury is "tethered" to California: even if Plaintiff relocated to another forum, the potential confusion and deceit created by the infringing mark and Defendant's activities would still affect California residents—customers of both Defendant and Plaintiff. *Cf. Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015) (applying *Walden* to find no personal jurisdiction over Michigan defendant who made statements to Ohio resident, that caused Delaware corporation with offices in Ohio to cease making payments into trusts in Wyoming and Australia, where defendant did not "enter[] California, contact[] any person in California, or otherwise reach[] out to California"); *Sec. Alarm Financing Enters., L.P. v. Nebel*, 2016 WL 946180, at *6-7 (N.D. Cal. Mar. 14, 2016) (applying *Walden* and finding that defendant sending responses to two emails to known California resident

[4] These actions also constitute "intentional acts."

"did not create an affiliation between [defendant] and California, but rather, between [defendant] and Plaintiff"); *Adobe Sys*, 2015 WL 5834135, at *5 (fact that defendant shipped 1.2% of its sales to customers in California did not establish "express aiming at forum" (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008) (lone transaction to a forum resident does not support the exercise of personal jurisdiction if the sale "involved the forum state only because that is where the purchaser happened to reside"))).[5]

Finally, Plaintiff establishes Defendant knew or should have known the brunt of the harm was likely to be suffered in California. Where, as here, a party brings a claim for infringement of intellectual property, "[i]t is foreseeable that the loss will be inflicted both in the forum where the infringement took place . . . and where the copyright holder has its principal place of business." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 679 (9th Cir. 2012); *see also Mavrix*, 647 F.3d at 1231 ("The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable."). Plaintiff is a California corporation, and its principal place of business is in California. Compl. ¶ 7. As "one of the largest and best-known purveyors of torque tools" (*id.* ¶ 2), Plaintiff has a customer base throughout the United States, including California (Suppl.

[5] Plaintiff's argument that Defendant purposefully directed its activity towards California by maintaining a website (Mot. at 6) is less effective. In the Ninth Circuit, "'maintenance of a passive website alone cannot satisfy the express aiming prong.'" *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (quoting Brayton Purcell, 606 F.3d at 1129). "Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed." *Id.* at 1231. Plaintiff must show "something more—conduct directly targeting the forum." *Id.* (citations omitted). "Something more" can include "the interactivity of the defendant's website[;] the geographic scope of the defendant's commercial ambitions[;] and whether the defendant 'individually targeted' a plaintiff known to be a forum resident[.]" *Id.* (citations omitted); *see also Craigslist, Inc. v. Kerbel*, 2012 WL 3166798, at *4 (N.D. Cal. Aug. 2, 2012) ("When evaluating purposeful direction in the context of websites, courts typically examine the level of interactivity and commercial nature of the exchange of information that occurs on the website to determine if sufficient contacts exist to warrant the exercise of jurisdiction" (internal quotation marks and citation omitted)). The Complaint includes no allegations regarding the interactivity of the website, no allegations the website contains content tailored to California residents, no allegations Defendant made sales through the website to California residents, and no allegation that any California user that is not associated with Plaintiff has ever used the website. Compare *Erickson*, 2015 WL 4089849, at *4 ("mere existence" of website did not give rise to personal jurisdiction), *with LiveCareer Ltd. v. Su Jia Techs. Ltd.*, 2015 WL 1448505, at *4 (N.D. Cal. Mar. 21, 2015) (interactive commercial website through which users provide contact information and information about work experience, education, and skills sufficient to establish purposeful direction). Defendant's website alone would not support the exercise of personal jurisdiction.

Bartels Decl., Ex. 6). Defendant "was aware of Plaintiff's business and had either actual notice and knowledge, or constructive notice" of the Mountz Mark. Compl. ¶ 19. It therefore was foreseeable that Plaintiff would suffer harm in California. By "go[ing] after" Plaintiff's customers (Mountz Decl., Ex. 3) and infringing the Mountz Mark, Defendant also should have known that its conduct would cause Plaintiff harm in California. Moreover, Defendant continued to use the infringing mark after receiving Plaintiff's cease and desist letter and after being served with the lawsuit in October 2015—indeed, it even tried to register the infringing mark with the PTO. Bartels Decl. ¶¶ 3-4, 10-11.

The Court finds Plaintiff has met its burden of establishing Defendant purposefully directed its conduct towards the forum.

*c. Claim arises from forum-related activities*

In trademark infringement actions, the claim arises out of forum-related activities when the infringing conduct harms the plaintiff in the forum. *See Panavision Int'l*, 141 F.3d at 1322; *see Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 963 (N.D. Cal. 2015) ("The Ninth Circuit has recognized that, in trademark or copyright infringement actions, if the defendant's infringing conduct harms the plaintiff in the forum, this element is satisfied."). Plaintiff, a California corporation with its principal place of business in California, owns the Mountz Mark; it would not have been harmed but for Defendant's infringement of the Mountz Mark. Plaintiff's claims arise from Defendant's forum-related activities.

*d. Reasonableness*

The exercise of jurisdiction is presumed reasonable when the first two prongs of the specific jurisdiction test have been met. *See Schwarzenegger*, 374 F.3d at 802. Because Plaintiff satisfies the first two prongs of the minimum contacts analysis, the burden shifts to Defendant to demonstrate why the exercise of jurisdiction would be unreasonable. Defendant has not appeared in the action, and therefore has not made a "compelling case" (*id.*) that exercising jurisdiction would be unreasonable. Nor can the Court determine based on the record that such a compelling case exists. *See Core-Vent Corp. v. Nobel Indus.*, 11 F3d 1482, 1487-88 (9th Cir. 1993) (listing reasonableness factors).

*e. Conclusion*

Based on the foregoing analysis, the Court concludes the Court may exercise specific jurisdiction over Defendant in this trademark infringement action.

3. Service of Process

"[I]n the absence of proper service of process, the district court has no power to render any judgment against the defendant's person or property unless the defendant has . . . waived the lack of process." *S.E.C. v. Ross*, 504 F.3d 1130, 1138-39 (9th Cir. 2007).

Service was proper under Federal Rule of Civil Procedure 4(h)(1)(B). Plaintiff personally served the individual authorized to accept service of process on behalf of Defendant with the summons and complaint, and other associated documents, on December 2, 2015. *See* Certificate of Serv.; Bartels Decl. ¶ 6. The Court may thus render a judgment in this matter.

**B. Legal Standard – Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) permits a court, following default by a defendant, to enter default judgment in a case. "The district court's decision whether to enter default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In determining whether default judgment is appropriate, the Ninth Circuit has enumerated the following factors for courts to consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying this discretionary standard, the Court takes the well-pleaded factual allegations contained in the plaintiff's complaint as true, except for those relating to the amount of damages. *See Televideo Sys.*, 826 F.2d at 917-18. Where a default judgment is granted, the scope of relief is limited by Federal Rule of Civil Procedure 54(c), which states that a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

Applying the foregoing *Eitel* factors to the case at bar, the undersigned finds default judgment is warranted in favor of Plaintiff.

1. The Possibility of Prejudice to Plaintiff

The first factor the Court considers in determining whether to grant a default judgment is the possibility of prejudice to Plaintiff if a default judgment is not entered. *Eitel*, 782 F.2d at 1471-72. Courts have held that prejudice exists where denying the requested default judgment would leave the plaintiff without a proper remedy. *See Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (concluding the plaintiff would suffer prejudice if default judgment was not entered where the plaintiff had only received partial payment owed under a contract).

Plaintiff has been attempting to resolve these issues more informally since July 2015. *See* Bartels Decl., Ex. 1 (July 2, 2015 cease & desist letter); *see also id.*, Ex. 3 (October 8, 2015 email to Defendant attaching complaint and waiver of service, and offering to settle if Defendant immediately stops use of mark and pays attorneys' fees incurred to date). Defendant has not been amenable to such resolution. *See id.*, Ex. 2 (re: July 2, 2015 cease & desist letter: "No. If I were you, I would do your research on companies who say they are torque tool specialist. There are literally dozens of companies that say this. This is going to be good... Good luck. See you in Court."). On the contrary, Defendant threatened to undermine Plaintiff's business in retaliation for filing the lawsuit: "Are you freeking kidding me? . . . Fine... [I] will have my lawyer respond to your lawyer. Now I know that we are competitors, and will never work together... This gives me a reason now to specifically go after your customers and compete and under price every one of your customers, since you want to be an asshole. Instead of giving you leads I can just take all your sales away.! By the way, i am one of a dozen companies that say torque tool specialist. Your attempt to trademark it doesn't have a leg to stand on." Mountz Decl., Ex. 3 (email from Defendant responding to July 2, 2015 cease & desist letter). Furthermore, after Plaintiff filed the Complaint, Defendant attempted to register the infringing mark with the PTO. It therefore appears that denying default judgment will leave Plaintiff without an adequate remedy to safeguard the Mountz Mark from Defendant's infringing activity, especially given the threat that Defendant plans to "specifically go after your customers." *Id.*

//

United States District Court
Northern District of California

2. Substantive Claims and the Sufficiency of the Complaint

The second and third *Eitel* factors require the Court to look at the merits of the substantive claims and the sufficiency of the allegations in the Complaint. *Eitel*, 782 F.2d at 1471-72. Plaintiff asserts trademark infringement claims under the Lanham Act (15 U.S.C. §§ 1114(1), 1125(a)), and one under California's Unfair Competition Law, Business and Professions Code section 17200 ("Section 17200").

> To prevail on a trademark infringement claim under § 1114, a plaintiff must show: (1) it owns the trademark at issue; (2) the defendant has used in commerce without authorization, a copy, reproduction, counterfeit or colorable imitation of the plaintiff's mark in connection with the sale, distribution, or advertising of goods and services; and (3) the defendant's use of the mark is likely to cause confusion or to cause mistake or to deceive. 15 U.S.C. § 1141(1). To prevail on a claim under § 1125(a), a plaintiff must show that the defendant's use of its mark is likely to cause confusion, deception or mistake as to "the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A).

*Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1058 (N.D. Cal. 2010) (adopting report and recommendation). In the Ninth Circuit, "state common law claims of unfair competition and actions pursuant to [Section 17200] are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988) (the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks.")).

Plaintiff has sufficiently stated claims for trademark infringement under the Lanham Act and Section 17200 by alleging (1) it is the registered owner of the Mountz Mark and has used the Mountz Mark for more than 20 years in connection with selling torque tools nationwide (Compl. ¶¶ 2-3, 7, 10-12, 16); (2) Defendant improperly and illegally used a mark that is confusingly similar to the Mountz Mark (*id.* ¶¶ 4, 13-14, 17); (3) in its nationwide sale, distribution, and advertising of goods and services relating to torque tools (*id.* (all)); (5) in a manner that is likely to cause confusion, cause mistake, or deceive as to the origin or sponsorship of the goods and services (*id.* ¶¶ 4, 14, 17, 26).

The merits of Plaintiff's claims are supported by the evidence provided in support of its Motion. In its application to use the "Torque Tool Specialist" mark with the PTO, Defendant represented to the PTO it has been using that mark "at least as early as 4/1/2004" in commerce for the rental of hand and power tools, as well as the repair of large torque tools turn large nuts and bolts. Bartels Decl., Ex. 6. The PTO's denial of the mark based on likelihood of confusion with the Mountz Mark supports Plaintiff's infringement claims. *Id.*, Ex. 7 (marks are confusingly similar because they share identical phrase "torque tool" followed by the virtually identical "specialist" or "specialists", "leading potential customers to likely be confused"; Defendant's goods and services "are related and overlapping" with Plaintiff's, and "may travel within the same channels of trade"; Defendant's mark is "confusingly similar and because the goods and/or services are related and/or travel within the same channels of trade, the applicant's mark is refused on grounds of likelihood of confusion."). Finally, Defendant's response to Plaintiff's cease and desist letter acknowledge Defendant's use of the mark, the overlap of customers between the parties, and the likelihood of confusion. *See* Mountz Decl., Ex. 3 ("This gives me a reason now to specifically go after your customers and compete and under price every one of your customers . . . Instead of giving you leads i can just take all your sales away.!").

These factors weigh in favor of granting default judgment.

3. The Sum of Money at Stake in the Action

The fourth *Eitel* factor addresses the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). When the amount at stake is substantial or unreasonable in light of the allegations in the complaint, default judgment is disfavored. *See Eitel*, 782 F.2d at 1472 (affirming the denial of default judgment where the plaintiff sought $3 million in damages and the parties disputed material facts in the pleadings). "However, when the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

While the Complaint requests money damages, Plaintiff requests only injunctive relief in the Motion, requesting the Court permanently enjoin Defendant from using "Torque Tool

United States District Court
Northern District of California

Specialist" in connection with its sale of products or services, or to so use any other mark that infringes on the Mountz Mark. This factor weighs in favor of granting the Motion. *See Yelp*, 70 F. Supp. 3d at 1177 (this factor favored granting default judgment because plaintiff only sought injunctive relief); *Google, Inc. v. Jackman*, 2011 WL 3267907, at *4 (N.D. Cal. July 28, 2011) ("Because money is not at stake, the fourth factor favors entry of judgment").

4. The Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case. *Eitel*, 782 F.2d at 1471-72. Here, there seems little possibility of dispute concerning the material facts. The evidence Plaintiff attached to its Motion supports Plaintiff's material allegations on each element of its infringement claims. *See supra* at 13.

5. Whether Default was Due to Excusable Neglect

The sixth *Eitel* factor examines whether the defendant's failure to respond to the Complaint was the result of excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, Plaintiff emailed Defendant a copy of the Complaint with a form requesting waiver of service in October 2015, and then served the Complaint in December 2015. *See* Bartels Decl. ¶¶ 5-6 & Ex. 3. Plaintiff also served Defendant with Motion for Default Judgment on August 26, 2016. Dkt. No. 18 (proof of service of Motion). Despite being aware of the lawsuit and the pending Motion, Defendant made no appearance in this matter. There is nothing in the record suggesting this failure is based on excusable neglect. *See Shanghai Automation Instr. Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (default after proper service was not excusable neglect). Thus, this factor supports default judgment.

6. Policy Favoring Deciding a Case on its Merits

The last *Eitel* factor examines whether the policy of deciding a case based on the merits precludes entry of default judgment. *Eitel*, 782 F.2d at 1472. In *Eitel*, the Ninth Circuit admonished that "[c]ases should be decided on their merits whenever reasonably possible." *Id.* However, courts have recognized that "the mere existence of [Rule 55(b)] indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation and citation omitted). Similarly, other courts have stated that default judgment is

appropriate when a defendant refuses to litigate a case. *See, e.g., Bd. of Trs. v. RBS Wash. Blvd, LLC*, 2010 WL 145097, at *4 (N.D. Cal. Jan. 8, 2010). Here, Defendant responded to communications from Plaintiff but in no way participated in the court proceedings. As such, a decision on the merits would not be possible. In situations such as this, Rule 55(b) allows the court to grant default judgment. This final factor weighs in favor of granting the Motion.

7. <u>Summary of the *Eitel* Factors</u>

Based on the foregoing analysis, the undersigned finds each of the *Eitel* factors weighs in favor of granting default judgment. Accordingly, the undersigned **RECOMMENDS** the District Court **GRANT** the Motion and enter default judgment against Defendant. The undersigned next turns to the relief Plaintiff requests be ordered as part of the default judgment.

**C. Relief Sought**

1. <u>Injunctive Relief</u>

Plaintiff requested injunctive relief in the Complaint (Compl., Prayer No. 2), and asks the Court to enter the following permanent injunction in granting default judgment:

> Defendant, and its principals, officers, directors, members, partners, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of this injunction order by personal or other service, shall permanently:
>
> 1. cease all use and never use the TORQUE TOOL SPECIALIST mark, the Mountz, Inc. mark, or any other mark likely to cause confusion with the Mountz, Inc. mark, in connection with the promotion, advertising, offering for sale, or sale, of any products or services;
>
> 2. never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendant are in any manner associated or connected with Mountz, Inc., or are licensed, approved, or authorized in any way by Mountz, Inc.;
>
> 3. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of its goods or services, are related to, authorized by, or sponsored by Mountz, Inc.;
>
> 4. cease all advertising of products or services under the TORQUE TOOL SPECIALIST mark, including but not limited to Defendant's website and its vehicles;
>
> 5. never unfairly compete with Mountz, Inc. in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production,

> distribution, marketing, and/or sale of products and services bearing the Mountz, Inc. mark; and
>
> 6. affirmatively abandon Defendant's application to register the TORQUE TOOL SPECIALIST mark, Application Serial No. 86/806,960, and never apply for, or seek to register any mark that is likely to cause confusion with the MOUNTZ mark.

Mot. at 17-18.

Plaintiff has shown it is entitled to judgment on its Lanham Act claims, and the Lanham Act authorizes the Court to issue injunctive relief. *See* 15 U.S.C. § 1116(a) (authorizing injunctions to prevent trademark violations); *see also Disney Ents., Inc. v. San Jose Party Rental*, 2010 WL 3894190, at *1 (N.D. Cal. Oct.1, 2010) (granting permanent injunction on default judgment after observing that defendant's "failure to respond to the suit gives the Court no comfort that these infringements have ceased or will cease."); *Coach, Inc. v. Diva Shoes & Accs.*, 2011 WL 1483436, at 9 (N.D. Cal. Apr. 19, 2011) (enjoining defendant from using trademark on infringing products, and noting "[p]ermanent injunctions are routinely granted in cases like the instant one where a defendant has not appeared in the action at all"). The undersigned accordingly finds Plaintiff generally has shown it is entitled to some type of permanent injunction barring Defendant from violating the Mountz Mark and now determines the proper scope for that injunction.

An injunction should be narrowly tailored to remedy only the specific harms shown by a plaintiff, rather than to enjoin all possible breaches of the law. *See Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004); *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998 (N.D. Cal. 2006). The undersigned has reviewed the language Plaintiff proposes be included in the injunction and, with the exception of a portion of the preamble and paragraphs (5) and (6), is satisfied it is not overbroad as it merely enjoins Defendant from engaging in the offending conduct previously described in this Order. With respect to the following, however, the undersigned is not satisfied that the requests are appropriate:

As to the preamble, Plaintiff asks the Court to bind "Defendant, and its principals, officers, directors, members, partners, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them, who receive actual notice of this injunction." Plaintiff's language is derived from Federal Rule of Civil Procedure 65(d), which specifies that

United States District Court
Northern District of California

injunctions are "binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." To the extent Plaintiff requests language of this type be included in the Order itself, the undersigned recommends the actual language of Rule 65(d) be included rather than Plaintiff's paraphrase of the Rule. The undersigned also notes that determining "[w]ho is in 'active participation with' a party is not a fully settled area of law[,]" and that "in general the inquiry is likely to always be fact-intensive." *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, 2014 WL 4449922, at *3 (C.D. Cal. Sept. 10, 2014) (citations omitted); *see also American Semiconductor, Inc. v. Cal. Assignments LLC*, 2013 WL 5937968, at *4 (N.D. Cal. Oct. 30, 2013) (reviewing Ninth Circuit standards for holding nonparty in contempt for violating injunction ).

As to paragraph (5), the undersigned finds it to be vague and not directed specifically at the Defendant's infringing conduct, but rather, a general proscription against Defendant engaging in any conduct that negatively affects Plaintiff's business or services.

As to paragraph (6), the undersigned finds it would unwisely and impermissibly invade the PTO's domain and potentially subject Defendant to liability for applying to register "any mark that is likely to cause confusion with the MOUNTZ mark," when it has not been shown that Defendant has attempted to register other marks with the PTO, or that the PTO or other courts have judged those marks to be confusingly similar to the Mountz Mark. Moreover, the relief described in this paragraph exceeds to scope of the relief Plaintiff demanded in the Complaint. *Cf.* Compl. ¶¶ 23, 28, 34.

Finally, Plaintiff requests the Court order Defendant to file and serve "a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with this injunction." Proposed Order at 4, Dkt. No. 17-4. Given that Defendant has defaulted in this action and has not participated in any of these proceedings, the undersigned finds ordering Defendant to file such a report would be futile and recommends the District Court not do so.

2. <u>Attorneys' Fees</u>

Plaintiff argues it is entitled to recover its reasonable attorneys' fees and costs pursuant to

15 U.S.C. § 1117(a) and Federal Rule of Civil Procedure 54(d)(1). *See* Mot. at 19. Instead of moving for fees and costs at this time, however, Plaintiff asks the Court to "provisionally award[] its costs and reasonable attorneys' fees." Proposed Order at 4. This request does not comply with Fed. R. Civ. P. 54(d) or Civil Local Rule 54, which require parties seeking attorneys' fees to file a motion to recover them. The undersigned recommends the District Court deny the request to provisionally award fees and costs, without prejudice should Plaintiff file a motion for attorneys' fees and costs that complies with the Federal Rules of Civil Procedure and the Local Rules.

**CONCLUSION**

Based on the above analysis, the undersigned **RECOMMENDS** the District Court **GRANT IN PART** Plaintiff Mountz, Inc.'s Motion for Default Judgment and enter judgment against Defendant Northeast Industrial Bolting and Torque, LLC with the following permanent injunction:

Defendant, its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with Defendant who receive actual notice of this Order by personal service or otherwise shall permanently:

1. Cease all use and never use the "Torque Tool Specialist" mark, or any other mark likely to cause confusion with the Mountz Mark ("The Torque Tool Specialists"), in connection with the promotion, advertising, offering for sale, or sale, of any products or services;

2. Never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, or sold by Defendant are in any manner associated or connected with Mountz, Inc., or are licensed, approved, or authorized in any way by Mountz, Inc.;

3. Never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that Defendants, or any of its goods or services, are related to, authorized by, or sponsored by Mountz, Inc.; and,

4. Cease all advertising of products or services under the "Torque Tool Specialist" mark, including but not limited to Defendant's website and its vehicles.

United States District Court
Northern District of California

The undersigned further **RECOMMENDS** the Court **DENY WITHOUT PREJUDICE** Plaintiff's request to provisionally award attorneys' fees and costs.

Plaintiff shall serve a copy of this Report and Recommendation upon Defendant. Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), a party may serve and file any objections within 14 days after being served.

**IT IS SO RECOMMENDED.**

Dated: September 30, 2016

______________________________
MARIA-ELENA JAMES
United States Magistrate Judge